THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   MARILYN WATKINS,                        CASE NO. C14-0247-JCC

10                       Plaintiff,         ORDER DENYING DEFENDANT'S
                                            MOTION FOR THE SANCTION OF
11          v.                              DISMISSAL AND GRANTING
                                            DEFENDANT'S MOTION FOR
12   INFOSYS, d/b/a INFOSYS, Ltd.,          SUMMARY JUDGMENT

13                       Defendant.

14

15          This matter comes before the Court on Defendant's Motion for the Sanction of Dismissal

16   (Dkt. No. 76) and subsequent briefing (Dkt. Nos. 77, 86, 87, 88, 97, and 98), [1] as well as

17   Defendant's Motion for Summary Judgment (Dkt. No. 72) and subsequent briefing (Dkt. Nos.

18   73, 74, 75, 89, 90, 91, 99, and 100). [2]

19          The Court determines that it is a close call whether to dismiss the above-captioned matter

20   as a sanction for Plaintiff's willful misconduct, although—based on Plaintiff's perjury and

21   spoliation—such a sanction would be justified. However, given the public policy favoring a

22

23   _____

24   [1] More specifically, the declaration of Thomas Carroll and exhibits (Dkt. No. 77), Plaintiff's response (Dkt. No. 86), Plaintiff's declaration (Dkt. No. 87), the declaration of Brian Dolman (Dkt. No. 88), Defendant's reply (Dkt. No. 97), and a second declaration of Thomas Carroll (Dkt. No. 98).

25   [2] More specifically, the declaration of Srikantan Moorthy (Dkt. No. 73), the declaration of Nandita Gurjar (Dkt. No. 74), the declaration of Thomas Carroll (Dkt. No. 75), Plaintiff's response (Dkt. No. 89), the declaration of Plaintiff (Dkt. No. 90), the declaration of Brian Dolman (Dkt. No. 91), Defendant's reply (Dkt. No. 99), and a second declaration of Thomas Carroll (Dkt. No. 100).

26   ORDER DENYING DEFENDANT'S MOTION
     FOR THE SANCTION OF DISMISSAL AND
     GRANTING DEFENDANT'S MOTION FOR
     SUMMARY JUDGMENT
     PAGE - 1

1  merits-based disposition of the case, coupled with the availability of summary judgment briefing,

2  the Court declines to dismiss the case as a sanction. However, given the severity of the

3  misconduct, the Court hereby ORDERS Plaintiff's counsel to SHOW CAUSE as to why Federal

4  Rule of Civil Procedure 11(b) has not been violated by their conduct.

5        Having thoroughly considered the parties' briefing and the relevant record, the Court

6  finds oral argument unnecessary and hereby DENIES the motion for the sanction of dismissal

7  and GRANTS the motion for summary judgment for the reasons explained herein.

8  **I.      BACKGROUND**

9        Plaintiff Marilyn Watkins brings the above-captioned lawsuit against her former

10  employer, IT-services provider Infosys, alleging discrimination based on her race/national origin,

11  retaliation, and breach of promise. (Dkt. No. 1 at 12.) Plaintiff is Caucasian and a Canadian

12  citizen with Permanent Resident status in the United States. (*Id.* at 10.) She worked for several

13  years as a manager with Defendant Infosys—a foreign company headquartered in Bangalore,

14  India—in its Bellevue, Washington office. (*Id.*) In September of 2013, she was terminated. (*Id.* at

15  12.) Plaintiff claims that her termination—as well as her treatment in terms of compensation and

16  job title—was motivated by discrimination based on her race and nationality. (*Id.*) Defendant has

17  consistently indicated that Plaintiff's termination was the result of a global, company-wide

18  reduction in force in the Education and Research group ("E & R") in which Plaintiff worked.

19  (*See, e.g.* Dkt. No. 72 at 2; 76 at 1.) That reduction in force caused Defendant to eliminate all

20  E&R positions in the U.S. and the United Kingdom, as well as positions in China and India.

21  (Dkt. No. 76 at 1.)

22        The behavior of both parties in the present litigation has been problematic. Numerous

23  discovery disputes have required Court intervention in producing documents, scheduling

24  depositions, and disclosing expert reports. (*See* Dkt. Nos. 29, 33, 53, 55, 57, 66, 67, and 81.) The

25  Court awarded Plaintiff attorney fees based on Defendant's failure to comply with discovery

26  orders. (Dkt. No. 66 at 4.) At different points in this litigation, both sides have dodged sensible

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 2

1  opportunities to litigate cooperatively. (*See, e.g.*, Dkt. No. 66 at 3 (describing Defendant's

2  noncompliance with Court discovery orders);[3] Dkt. No. 86 at 3 n. 1, 4 n. 2 (Plaintiff's semantic

3  hair-splitting regarding the scope of requests for interrogatories)).

4  **II.      DISCUSSION**

5  **A.      Motion for the Sanction of Dismissal**

6  **1.      Factual Background**

7        On or about October 20, 2013, Plaintiff performed a Bing search for the term "disk

8  wipe," downloaded and installed "MiniTool Drive Wipe" software onto the hard drive of her

9  work computer, and ran the program to wipe files including folders entitled "D:\E&R\Infosys

10  Termination," and "My New Role Lawsuit." (Dkt. No. 77-10 at 9; Dkt. No. 76 at 5.) Moreover,

11  eleven external media drives had been connected to Plaintiff's laptop in the days prior to the disk

12  wipe. (Dkt. No. 76 at 4.) Defendant became aware of this fact through its own consultation with

13  an expert. (*Id.*)

14        However, in previous, sworn testimony, Plaintiff responded to interrogatories indicating

15  that she had "produced the contents of her computer to Defendant as part of her Initial

16  Disclosures," that "she did not 'remove' things from Defendant's premises," and that she

17  "followed procedures typical with such litigation . . . to avoid the alteration or deletion of

18  documents, in addition to preserving data back-ups relating to her employment." (Dkt. No. 77-2

19  at 9, 13.) In other words, in her responses to Defendant's interrogatories, signed February 3,

20  2015, Plaintiff perjured herself. (*Id.* at 26.)

21        Furthermore, the rationale Plaintiff has provided—both for wiping the computer files and

22

---

23  [3] "On March 27, 2015, the Court granted Plaintiff's motion to compel this discovery, and Defendant apparently
believed that it could circumvent the Federal Rules and the Court's order while awaiting a more specific ruling. (*See*
24  Dkt. No. 56, p. 2.) In so doing, Defendant wasted Plaintiff's time as well as judicial resources by forcing this issue to
be readdressed in a Motion for Reconsideration. The Court reiterates that, while it is true that Plaintiff's Motion to
25  Compel may have lacked the desired specificity with regard to the production of written discovery, (*see* Dkt. No. 53,
pp. 5–6; Dkt. No. 36-1, p.7), neither did Defendant provide *any* authority or support for its contention that it did not
26  need to provide discovery based on these "out of the U.S." objections, (*see* Dkt. No. 42, pp. 7–8) until now." (Dkt.
No. 66 at 3.)

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 3

1   for failing to disclose information and documents related to the wipe—have been nonsensical. In

2   her deposition, Plaintiff admitted for the first time that she wiped the files, claiming that she did

3   so out of concern for information preservation[4] and client confidentiality.[5] (Dkt. No. 77-13 at

4   12–13.) In a supplemented response, filed on the last day of discovery,[6] Plaintiff again refused to

5   turn over the wiped contents of her work computer, asserting that, "all electronic records, save

6   for unsent drafts, passed through Defendant's servers and, therefore, the company is already

7   possession [sic] of this information." (Dkt. No. 77-14 at 10.) Plaintiff continued, "the electronic

8   records not previously produced or utilized in this litigation are vast and irrelevant to the claims

9   or controversies in this case." (*Id.*) Finally, Plaintiff rather unconvincingly indicated that she

10  "[was] in the process of replicating all documents that she retained and will provide the same to

11  Defendant upon their soonest availability." (*Id.*)

12          The Court finds Plaintiff's responses both illogical and unbelievable. First of all, it belies

13  the very concept of a "disk wipe," to argue that wiped files would continue to be in Defendant's

14  possession. Second, not only does Plaintiff's unilateral determination of the irrelevance of files

15  in her sole possession usurp the judicial function; it is also contradicted by her subsequent

16  reliance on the very same documents. (Dkt. No. 90 at Exs. A, H, R, S; Dkt. No. 91 at Ex. 4.)

17  Third, a hollow promise to gather and produce evidence at the conclusion of discovery does not

18  undermine the misconduct, spoliation, and perjury already committed—nor does Plaintiff's late

19  production of 15,000 pages of documents without the corresponding flash drives. (*See* Dkt. No.

---

[4]   Q: Would wiping your computer be consistent with taking special attention to avoid the alteration or deletion of documents?
A: Yes, it would be.
Q: And how would that be, wiping your computer?
A: I felt that I needed to protect the information that was on my computer, so I preserved it, and then I eliminated it, more or less, from the drive.

[5]   Q: You wiped it so it wouldn't have anything on it if they redeployed it?
A: Correct. I had a lot of Infosys confidential information by virtue of being a Job Level 8 . . . I had client data. It was unconscionable to me that that information would end up in the hands of somebody that shouldn't . . .

[6] In so filing at the close of the discovery period, Plaintiff falsely characterized "[t]hese interrogatories and requests for production" as "continuing in nature." (Dkt. No. 77-14 at 1.)

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 4

1  77-15.)

2      Plaintiff's brief in response to Defendant's motion for the sanction of dismissal only

3  exacerbates the problem. (Dkt. No. 86.) There, Plaintiff regurgitates flimsy justifications for

4  wiping her disk drive, doubles-down on her unsupported argument about the irrelevance of the

5  wiped files, and asserts blankly that "there has been no actual suppression or withholding of

6  evidence since the entire content of Plaintiff's computer has been produced to Defendant."[7] (*Id.*

7  at 7, 9.)

8  **2.      Standard of Review**

9      District courts possess an inherent power to dismiss cases where "a party has engaged

10  deliberately in deceptive practices that undermine the integrity of judicial proceedings."

11  *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

12      Before imposing the sanction of dismissal, courts in the Ninth Circuit must weigh five

13  factors: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to

14  manage its dockets, (3) the risk of prejudice to the party seeking sanctions, (4) the public policy

15  favoring the disposition of cases on their merits, and (5) the availability of less drastic sanctions.

16  *Anheuser-Busch*, 69 F.3d at 348; *Leon*, 464 F.3d at 958. The Court reviews Plaintiff's perjury

17  and spoliation in light of these five factors.

18
19
        **a.      Public Interest in Expeditious Resolution/the Court's Need to Manage Its Docket**

20
21
22
23
    The first two factors, public interest in the expeditious resolution of cases and the Court's need to effectively manage its docket, both favor dismissal. Plaintiff's actions resulted in the concealment and destruction of evidence, seriously delaying the progress of this litigation. As the Court previously acknowledged, discovery in this case has not gone smoothly; the discovery

24

25
26
[7] Plaintiff adds that she "is prepared to turn over the USB drives to Defendant on the condition that agreement is reached on how to protect the privacy and confidentiality of Plaintiff's personal data . . ." (Dkt. No. 86 at 7, n.3.) Plaintiff misses the mark: this is no longer a discovery dispute, and the time for such delay tactics has passed.

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 5

1   deadline had to be extended not once but four times based on the behavior of both parties. (Dkt.

2   Nos. 24, 26, 66, 70). Twice the parties have sought Court intervention via telephonic conference.

3   (Dkt. Nos. 24, 81.) Even after the discovery completion deadline, the parties continue to bring

4   discovery-related disputes to the Court. (Dkt. No. 104, Dkt. No. 86 at 7, n.3). In other words, the

5   above-captioned matter has required substantial judicial resources. While it is true that both

6   parties have obstructed the expeditious resolution of this matter, the Court finds that Plaintiff's

7   spoliation, perjury, and delayed disclosures have contributed immensely to this litigation's lack

8   of forward momentum.

9          c.      **Risk of Prejudice to Defendant**

10          Consideration of the third factor, the risk of prejudice to the party moving for sanctions,

11   also favors dismissal of this case. The prejudice inquiry requires courts to "look[] to whether the

12   spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to

13   interfere with the rightful decision of the case." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959

14   (9th Cir. 2006) (internal parentheses omitted). Plaintiff's actions fit squarely within this

15   description. Despite Plaintiff's insistence to the contrary, wiping and withholding evidence from

16   Defendant goes right to the heart of Defendant's ability to litigate or try this case.

17          d.      **Merits-Based Disposition**

18          The fourth factor, the over-arching public policy favoring a merits-based disposition of

19   any given case, plainly tips against dismissing this case as a sanction. The summary judgment

20   briefing before the Court enables such a merits-based disposition of this case.

21          e.      **Availability of Less Drastic Sanctions**

22          Consideration of the fifth and final factor weighs against dismissal. The Court does not

23   take lightly the degree to which perjury taints the possibility of fair judicial proceedings. *See*

24   *Arnold v. County of El Dorado*, 2012 WL 3276979, at *4 (E.D. Cal. 2012) ("[P]erjury on any

25   material fact strikes at the court of the judicial function . . .). Lying under oath and submitting

26   false discovery responses constitute deliberate misconduct warranting the sanction of dismissal.

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 6

1    *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) ("Dismissal is an appropriate

2    sanction for falsifying a deposition.").

3        Prior to implementing the sanction of dismissal, however, it is appropriate for district

4    courts to (1) consider the feasibility of less drastic sanctions, (2) to implement other sanctions

5    short of dismissal, and (3) to warn the offending party of the possibility of dismissal before so

6    ordering. *Leon*, 464 F.3d at 960 (quoting *Anheuser-Busch*, 69 F.3d at 352). In particular,

7    warnings prior to dismissal are frequently required by reviewing courts. *Malone v. U.S. Postal*

8    *Service*, 833 F.2d 128, 133 (9th Cir. 1987) ("Failure to warn has frequently been a contributing

9    factor in our decisions to reverse orders of dismissal."). The Court is aware that no such warning

10   has been given to Plaintiff—largely because the extent of Plaintiff's misconduct was not made

11   known to the Court prior to this latest round of motions.

12       Upon consideration of the five factors announced by the Ninth Circuit, the Court finds

13   that three weigh in favor of dismissal and two do not. While it's an incredibly close call, the

14   Court prefers to address this case, finally, on its merits. As such, Defendant's motion for the

15   sanction of dismissal (Dkt. No. 76) is hereby DENIED.

16       **3.      Order to Show Cause re: Rule 11 Sanctions**

17       Federal Rule of Civil Procedure 11(c)(3) authorizes the Court, on its own initiative, to

18   "order an attorney, law firm, or party to show cause why conduct specifically described in the

19   order has not violated Rule 11(b)." Rule 11(b) establishes that the signature of an attorney on any

20   pleading represents a certification that the enclosed arguments are nonfrivolous, supported by

21   evidence, and not presented for improper purpose. The Court has serious misgivings about

22   counsel's signature on various pleadings submitted in this litigation—most specifically,

23   Plaintiff's answers to Defendant's first set of interrogatories and requests for production in which

24   Plaintiff perjured herself. (Dkt. No. 77-2 at 26–27.)

25       Counsel for Plaintiff is hereby ORDERED to show cause as to why sanctions should not

26   issue against them. This response, not to exceed eight (8) pages, is due to the Court on or before

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 7

1 | August 7, 2015.

2 | **B.       Motion for Summary Judgment**

3 | **1.       Relevant Factual Background**

4 |      Plaintiff was hired by Infosys Consulting, Inc. in 2005. (Dkt. No. 75-2 at 3.) In 2011,

5 | Infosys Consulting, Inc. was merged into Defendant's Management Consulting Services

6 | ("MCS") group. (*Id.* at 4–5.) Plaintiff became a "Senior Principal" in the MCS department in

7 | 2007. (Dkt. No. 75-2 at 7.) In April, 2012, Plaintiff was promoted—despite not meeting the

8 | initial requirements of the job posting—to head the Management and Consulting Skills

9 | Department ("Head – MCSD"), a position housed in the Education & Research ("E&R") group.

10 | (Dkt. No. 75-2 at 17.) A company-wide reduction in force led to the elimination of Plaintiff's

11 | position in August 2013. (Dkt. No. 73 at ¶¶ 20–21.)

12 |      Plaintiff's complaints of discrimination are three-fold: she alleges (1) that she was

13 | wrongly denied an increase in compensation when assuming the Head – MCSD position, (2) that

14 | she was wrongly denied a title, and (3) that her termination was discriminatory in nature.

15 | **a.       Compensation**

16 |      Defendant assigns its employees two "levels;" a "Job Level" to designate their position

17 | level within the company, and a "Personal Level" identifying an individual employee's

18 | compensation relative to others. (Dkt. No. 75-1 at 7–8.) Whereas the Job Level is connected with

19 | each given position, an employee's Personal Level pertains to his or her compensation, follows

20 | them individually, and is subject to change during a "compensation review cycle." (*Id.* at 7–10.)

21 | It is not unprecedented for an employee to have a Job Level incongruent with her Personal Level.

22 | (*Id.*)

23 |      Plaintiff entered into her role as Head – MCSD in the E&R group in July, 2012. (Dkt.

24 | No. 75-2 at 21.) Because hers was an internal promotion, pursuant to Defendant's policy,

25 | Plaintiff was not eligible for an increase in her Personal Level until the next "compensation

26 | review cycle." (Dkt. No. 73-2 at 5.) Accordingly, while Plaintiff's Job Level increased to 8 by

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 8

1   virtue of the position, her Personal Level remained a 7. (Dkt. No. 73-3 at 2.)

2          Plaintiff was dissatisfied with her compensation upon entering her new position. Multiple

3   times, she inquired about a compensation increase and, accordingly, an increase in her Personal

4   Level. (Dkt. No. 73 at ¶¶ 11, 12.) Plaintiff contends that between July and September of 2012 her

5   supervisor, Strikantan Moorthy, verbally promised her an eventual compensation increase

6   commensurate with new MCS partners.[8] (Dkt. No. 75-2 at 30–31.) No writing memorializes this

7   agreement—and Plaintiff does not contend that such writing exists.[9] (*See* Dkt. No. 89 at 5.)

8   Subsequent e-mail communication from Mr. Moorthy confirmed that Plaintiff's new Job Level

9   was an 8, but was silent with respect to her Personal Level. (Dkt. No. 73-3 at 2.)

10          In July 2013, a compensation review cycle took place. (Dkt. No. 73 at ¶ 14.) Plaintiff's

11  compensation was reviewed at that time. (*Id.*) It was then determined that Plaintiff's

12  compensation, which carried over from her previous department where employees are paid more,

13  was already consistent with her new position. (*Id.*)

14  **b.      Title**

15          In addition to the designations that accompany an employee's Job Level and Personal

16  Level, Defendant also recognizes certain employees by way of a title, such as Associate Vice

17  President. (Dkt. No. 73 at 2.) Based on specific criteria, Defendant holds a "title-holder"

18  recognition process about once a year. (Dkt. No. 75-1 at 6.) For positions based in the U.S., a

19  partnership selection process supplants the "title-holder" recognition process. (Dkt. No. 75-4 at

20  3–4.) This process was not undertaken in the company at all during 2012. (*Id.* at 15.)

21          Earlier in her career with Defendant, Plaintiff aspired to move up in the company

22  hierarchy from Senior Principal to a "partner" in the MCS department, a desire she expressed

23  beginning around 2008. (Dkt. No. 75-1 at 9–11.) The partnership process, roughly equivalent to

24

25

26  [8] Plaintiff was not, however, a partner herself.
    [9] Plaintiff only argues that Mr. Moorthy later wrote in an e-mail, "I remember our conversation." (Dkt. No. 89 at 5.)

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 9

1    a "title-holder" process in Defendant's non-U.S. locations, typically occurs about once per year.

2    (Dkt. No. 75-4 at 3–4; Dkt. No. 75-3 at 5–6.) The process includes a self-nomination form, due

3    diligence review by a selection committee of partners, and—if deemed a good candidate—a

4    presentation to the company's partners. (Dkt. No. 75-3 at 5–6.) Plaintiff began to seek

5    consideration for a partner position for the first time in 2011, with the understanding that the

6    process would begin in February 2012. (Dkt. No. 75-2 at 13–14.) It was communicated to

7    Plaintiff that she was eligible to be considered for a partner role in 2012. (*Id.* at 14.)

8           Before undergoing that process, however, the Head – MCSD position was created. (Dkt.

9    No. 75-2 at 17.) In April 2012, Plaintiff was selected for that position despite not meeting the

10   requirements of the initial job posting. (*Id.* at 17–21.) Having received this promotion, Plaintiff

11   withdrew herself from consideration for partner. (*Id.* at 21.) At that time, her candidacy for the

12   title of partner was in the due diligence stage. (*Id.* at 15.)

13          While Plaintiff withdrew herself from the partner selection process after being selected as

14   Head – MCSD in 2012, she continued to seek a title after assuming that role. (Dkt. No. 73 at ¶

15   19.) In June of 2013, Plaintiff asked Mr. Moorthy about being considered for a title. (Dkt. No.

16   73-6 at 2.) In July 2013, it was determined that Plaintiff was not eligible to be considered for a

17   title because of her most recent performance rating. (Dkt. No. 74 at ¶ 11.)

18   **c.      Termination**

19          A change in company leadership in June 2013 led to a cost reduction initiative. (Dkt. No.

20   73 at ¶ 20.) This led to a global reduction in force eliminating approximately two hundred

21   positions across various locations and departments. (Dkt. No. 75-5 at 5). The positions

22   eliminated included all ten high-paying E&R positions: of these four were in the United States,

23   two were in the United Kingdom, and four were in China. (Dkt. No. 73 at ¶ 21.) Consequently,

24   Plaintiff's position was eliminated. (*Id.*)

25          When Plaintiff received confirmation that her position would be eliminated, Nandita

26   Gurjar, the new head of the E&R group, offered either to seek opportunities for Plaintiff in India

1    or provide her with a severance package. (Dkt. No. 74 at ¶ 8.) Plaintiff did not express openness

2    to working in India. (*Id.*) Rather, Plaintiff was authorized to apply for positions in other

3    departments within the company by September 15, 2013. (*Id.* at ¶¶ 8–9; Dkt. No. 75-2 at 50–51.)

4    The procedures implemented in Defendant's cost-optimization process allowed employees

5    whose positions had been eliminated to apply for other open jobs at their Job Level. (Dkt. No.

6    75-2 at 45.) Plaintiff was allowed to apply at either a Job Level 7 or 8, in a relaxation of the

7    policy. (*Id.* at 46–47.) Plaintiff was considered for two positions. (Dkt. No. 75-8 at 3.) Of those

8    two, she and the interview team agreed that one was not a good fit. (*Id.*) She was not considered

9    a fit for the second position based on its location. (*Id.*) Finally, a partner in the MCS group

10   looked into using an available hiring slot to find a position for Plaintiff, but the MCS group was

11   itself downsizing and unable to accommodate a new hire. (Dkt. No. 75-4 at 8–9.)

12          On September 3, 2013, Plaintiff filed an internal complaint alleging national origin

13   discrimination, breach of promise, retaliation, wrongful termination, and wage discrimination.

14   (Dkt. No. 73-8.) A third-party investigator concluded that Defendant's reduction in force efforts

15   were supported by legitimate reasons. (Dkt. No. 75-7 at 3–7.)

16   **2.      Standard of Review**

17          Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant

18   summary judgment if the movant shows that there is no genuine dispute as to any material fact

19   and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such

20   a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in

21   the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242,

22   255 (1986). Once a motion for summary judgment is properly made and supported, the opposing

23   party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"

24   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R.

25   Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute

26   about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 11

1  verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Conclusory, non-specific

2  statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v.*

3  *National Wildlife Federation*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is

4  appropriate against a party who "fails to make a showing sufficient to establish the existence of

5  an element essential to that party's case, and on which that party will bear the burden of proof at

6  trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Facts or declarations made in support

7  of, or opposition to, a motion for summary judgment must be based on personal knowledge and

8  otherwise admissible in evidence.[10] Fed. R. Civ. P. 56(c)(4).

9        Plaintiff alleges four claims: (1) race/national origin discrimination in violation of Rev.

10  Code. Wash. § 49.60.180, (2) discrimination in compensation, job status, and terms and

11  conditions of employment, presumably in violation of the same, (3) retaliation in violation of

12  Rev. Code Wash. § 49.60.210, and (4) breach of promise of specific treatment. (Dkt. No. 1 at

13  12.) The Court addresses these claims in two stages: turning first to the discrimination claims, all

14  of which fail for lack of a prima facie case, and second to the breach of promise claim which

15  fails as a matter of law.

16        The Court finds that, with respect to each claim, no genuine dispute of material fact exists

17  and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's motion

18  for summary judgment (Dkt. No. 72) is GRANTED.

19  **3.        Plaintiff Fails to Establish Even a Prima Facie Case of Discrimination**

20        Plaintiff's first three claims—all brought under the Washington Law Against

21  Discrimination ("WLAD")—are appropriately considered together. Plaintiff's second claim that

22  she was "discriminated against . . . in her compensation, job status, and terms and conditions of

23  her employment because she is Caucasian/North American," is essentially a recitation of her

24

25

26  [10] The Court agrees that Plaintiff submitted inadmissible evidence in support of her response, and disregards exhibits or declarations made without the declarant's firsthand knowledge as required by Federal Rule of Evidence 602.

1   first, and fails to direct the Court to any independent legal authority. (Dkt. No. 1 at 12.) The

2   Court understands claims one through three as alleging that race and nationality-based

3   discrimination occurred in the context of (1) Plaintiff's compensation, (2) Plaintiff's title, and (3)

4   Plaintiff's termination.

5          Where, as here, a plaintiff brings a discrimination claim under the WLAD without direct

6   evidence, Washington courts are to employ the burden-shifting analysis under *McDonnell*

7   *Douglas*, 411 U.S. 792 (1973). *Scrivener v. Clark College*, 181 Wash. 2d 439, 446 (Wash. 2014).

8          The *McDonnell Douglas* framework first requires a prima facie showing that: "(1)

9   plaintiff is a member of a protected class; (2) plaintiff applied for [a benefit or treatment] and

10  was qualified to receive it; (3) the [benefit or treatment] was denied despite being qualified; and

11  (4) defendant approved [the benefit or treatment] for a similarly situated party during a period

12  relatively near the time plaintiff was denied [the benefit or treatment]." *Riehl v. Foodmaker, Inc.*,

13  15 Wash. 2d 138, 149–50 (Wash. 2004); *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th

14  Cir. 1997). After the plaintiff proves her prima facie case, the burden shifts to the defendant to

15  articulate a "legitimate, nondiscriminatory reason for its action." *Id.* Finally, if the defendant has

16  carried its burden, the plaintiff must then prove, by a preponderance of the evidence, that the

17  reason asserted by the defendant is a "mere pretext." *Id.*

18         A *McDonnell Douglas* prima facie case is not the equivalent of a finding of actual

19  discrimination, but rather creates an inference of discriminatory animus that the action was more

20  likely than not based on impermissible considerations. *See Sanghvi v. City of Claremont*, 328

21  F.3d 532, 537 (9th Cir. 2003) (quoting *Gay v. Waiters' & Dairy Lunchmen's Union, Local No.*

22  *30*, 694 F.2d 531, 546 (9th Cir. 1982)). A prima facie case under McDonnell Douglas is one in

23  which "the plaintiff has met his immediate burden of production, but not necessarily his ultimate

24  burden of persuasion." *Id.* (quoting *Gay*, 694 F.3d at 543 n. 10).

25         Here, there remains no genuine dispute of material fact such that Plaintiff could prove a

26  prima facie case of discrimination under the *McDonnell Douglas* framework. The Court turns

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 13

1  individually to the three ways Plaintiff alleges she was discriminated against: in her

2  compensation, her title, and her termination.

3  **a.      Compensation**

4        There is no genuine dispute of material fact as to whether Plaintiff was discriminated

5  against in her compensation. Turning to the *McDonnell Douglas* test, while there is no dispute

6  that Plaintiff's claim of racial discrimination places her in a protected class,[11] she cannot

7  establish the remainder of a prima facie case.[12]

8        Having established that she is a member of a protected class, Plaintiff must next show

9  that she applied for a benefit or treatment for which she was qualified. *Riehl v. Foodmaker, Inc.*,

10  15 Wash. 2d 138, 149–50 (Wash. 2004); *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th

11  Cir. 1997). As Plaintiff was not qualified to receive increased compensation,[13] her prima facie

12  case fails here. As the Court's discussion above outlines, Plaintiff sought a compensation

13  increase despite having retained a salary from a higher-paying department. (Dkt. No. 73 at ¶ 14.)

14  There is no genuine dispute, supported by admissible evidence, that Plaintiff's compensation

15  review cycle was handled any differently than her peers of Indian race or descent.

16        Furthermore, even if Plaintiff could establish that she was entitled to a compensation

17  increase, which she was not, she fails to establish that a similarly-situated party was approved for

18  one. When Plaintiff assumed her role as Head – MCSD, her base salary was $203,164 with a

19

20  [11] Discrimination based on race is considered a violation of the WLAD. Rev. Code. Wash. §§ 49.60.030, 49.60.180. Minority status is not required by the statute, but rather any discrimination based on "race," is covered. *Id.*
21  Furthermore, under *McDonnell Douglas*, Courts construe *any* racial discrimination as satisfying the first step of the prima facie case, even where the litigant is Caucasian. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d
22  654, 659 (9th Cir. 2002), *as amended* (July 18, 2002) ("It is well-established that Title VII applies to any racial group, whether minority or majority.") (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278 (1976)).
23  [12] The Court agrees with Defendant that, at times, Plaintiff's national origin discrimination claim conflates the concept of location with national origin or ancestry. *See Lemnitzer v. Philippine Airlines*, 783 F. Supp. 1238, 1240–
24  41 (N.D. Cal. 1991) (applying Title VII and granting summary judgment of national origin claims based on a complaint that defendant failed to appoint plaintiff to overseas positions); Rev. Code. Wash. § 49.60.040(18). The
25  Court proceeds with its analysis focusing primarily on Plaintiff's race-based discrimination claims. However, as Plaintiff's standing as a protected class member is not in dispute, it is largely an irrelevant point.
26  [13] Quite the opposite: Plaintiff was selected for a promotion despite *not being qualified* for the initial job posting, which strongly negates her claim of discrimination.

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 14

1  potential performance bonus of $81,266. (Dkt. No. 73 at ¶ 16.) Effective July 1, 2013, her base

2  salary was increased to $218,792 with a potential performance bonus of $65,638. (*Id.*) Of the

3  three colleagues of Indian nationality whom Plaintiff identifies as her peers, accounting for

4  exchange rates applicable on July 1, 2013, their individual annual compensations were $154,548,

5  $148,620, and $132,060.[14] (*Id.* at ¶ 17.) In other words, not only was Plaintiff not eligible or

6  qualified to receive a compensation increase based on her role and history with the company, she

7  has not established that any similarly-situated employee was granted the benefit she sought. She

8  cannot carry her burden to establish a prima facie case of discrimination in her compensation.

9  **b.      Title**

10  Nor does there exist a genuine dispute of material fact as to whether Plaintiff was

11  discriminated against in her pursuit of a title. While, again, she meets the first showing that she

12  belongs to a protected class, Plaintiff cannot make the rest of her prima facie case.

13  Plaintiff sought some sort of title twice; (1) first, by way of the partner application

14  process, from which she withdrew (*see* Dkt. No. 75-2 at 21), and (2) second, via the "title-

15  holder" application process, for which she was determined unqualified (*see* Dkt. No. 74 at ¶ 11).

16  In other words, the first time Plaintiff sought a title, she was never denied anything as she

17  withdrew from the process. Furthermore, the company did not undergo a titleholder process at all

18  in 2012, and so Plaintiff is unable to show that a similarly-situated person of a different race or

19  national origin received such a benefit. (Dkt. No. 75-4 at 15.) The second time she sought a title,

20  Plaintiff was not qualified to receive the benefit based on her performance reviews. (Dkt. No. 74

21  at ¶ 11). Plaintiff's prima facie case fails at step two.

22  There is no genuine dispute as to whether Plaintiff can establish that she was

23  discriminated against in her pursuit of a title, and her claims related to this effort fail as a matter

24  of law.

25  

26  [14] The Court is not aware of any cost-of-living adjustment to these figures.
ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 15

1  **c.      Termination**

2          Finally, with respect to Plaintiff's termination, a prima facie case of discrimination

3  cannot be shown. As has been thoroughly discussed, Plaintiff's position was eliminated based on

4  a large-scale, global reduction in force.[15] While, here, Plaintiff has established that she is a

5  member of a protected class and that she lost a benefit—her position—despite qualification, she

6  cannot make a showing regarding the fourth step of the *McDonnell Douglas* prima facie case. In

7  short, Defendant did not "approve" the benefit for a similarly-situated party, as there is no

8  dispute that Plaintiff's position was eliminated altogether.

9          Plaintiff argues that she has demonstrated discrimination based on the fact that Defendant

10  hired employees in India around the time her U.S.-based position was eliminated. (Dkt. No. 89 at

11  11.) However, this argument conflates location with national origin discrimination as discussed

12  above: Plaintiff has not presented admissible evidence[16] regarding the actual race or national

13  origin of the employees hired to work in India.[17] Moreover, the hiring of employees based in

14  India is entirely consistent with the cost optimization and reduction in force Defendant openly

15  acknowledges implementing. Plaintiff cannot make a prima facie showing of discrimination in

16  her termination.

17          For the above reasons, Defendant's motion for summary judgment with respect to

18  Plaintiff's first three claims is appropriately GRANTED.

19  **4.      No Genuine Dispute Exists Regarding the Oral Promise Made to Plaintiff**

20          Finally, the Court turns to Plaintiff's fourth claim for breach of promise of specific

21  treatment, which fails as a matter of law. To establish a breach of promise of specific treatment,

22

23  [15] Plaintiff's arguments regarding the quality of her job performance are therefore irrelevant. (*See* Dkt. No. 86 at 9.)
    [16] Rather than provide admissible evidence, Plaintiff makes statements such as,"Plaintiff also proffered
24  circumstantial evidence that tends to question the objectivity of Defendant targeting layoff [*sic*] of U.S-based
    employees," and "[t]his is a case where Plaintiff established both comparative and statistical evidence to support the
25  inference that Defendant targeteing Caucasian, U.S.-based workers . . ." (Dkt. No. 89 at 11.) Plaintiff's response
    brief is riddled with statements such as this, which do nothing to generate a genuine dispute of material fact.
26  [17] Rather, her contention that, "I understand that Ms. Gurjar hired Indians/Asians exclusively . . ." is not based on
    personal knowledge and lacks evidence. (*See* Dkt. No. 90 at 10.)

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 16

1  Plaintiff must prove "that a statement (or statements) in an employee manual or handbook or

2  similar document amounts to a promise of specific treatment in specific situations[.]" *Korslund*

3  *v. DynCorp Tri-Cities Servs, Inc.*, 156 Wash. 2d 169, 184–85 (Wash. 2005). Courts consider the

4  claim of breach of promise of specific treatment to require a written agreement or understanding.

5  *See Winspear v. Boeing Co.*, 75 Wash. App. 870, 876 (Wash. App. 1994). As it is undisputed

6  that any agreement between Plaintiff and Mr. Moorthy was oral,[18] Plaintiff's claim for breach of

7  promise of specific treatment fails as a matter of law. Accordingly, Defendant is entitled to

8  summary judgment over this last claim.

9  **III.    CONCLUSION**

10      For the foregoing reasons, Defendant's motion for the sanction of dismissal (Dkt. No. 76)

11  is DENIED and Defendant's motion for summary judgment (Dkt. No. 72) is GRANTED.

12      DATED this 23 day of July 2015.

13

14

15

16

17  _____

18  John C. Coughenour
    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24  _____

25  [18] While the Court acknowledges that Mr. Moorthy could have expressed more professional courtesy to Plaintiff in
    their e-mail correspondence, e.g. clarifying that her Personal Level would be revisited upon the next compensation
26  review cycle rather than remaining silent on the issue, this is far from actionable.

ORDER DENYING DEFENDANT'S MOTION
FOR THE SANCTION OF DISMISSAL AND
GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT
PAGE - 17